UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| NARANJIBHAI PATEL; et al. | ) No. 08-56567 |
| | ) |
| Plaintiffs-Appellants, | ) DC# CV-05-01571-DSF(AJWx) |
| | ) [consolidated w/CV 03- |
| | ) 3610 DSF(AJWx) and CV 04- |
| | ) 2192 DSF(AJWx)] |
| | ) |
| | ) |
| | ) Central California |
| vs. | ) |
| | ) |
| CITY OF LOS ANGELES; et al., | ) |
| | ) |
| | ) |
| Defendants-Appellees. | ) |
| | ) |
| _____ | ) |

DECLARATION OF FRANK A. WEISER
IN SUPPORT OF MOTION AND REQUEST FOR
TRANSFER TO DISTRICT COURT FOR
CONSIDERATION OF ATTORNEY'S FEES
OR FOR AN EXTENSION OF TIME TO FILE
SUPPLEMENT TO APPELLANTS' MOTION FOR
ATTORNEYS FEES

APPEAL FROM THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

HON. DALE S. FISCHER, Presiding

FRANK A. WEISER
Attorney at Law
3460 Wilshire Blvd., Suite 1212
Los Angeles, CA 90010
(voice) - (213) 384-6964
(fax)   - (213) 383-7368
Attorney for Plaintiffs-Appellants
NARANJIBHAI PATEL, RAMILABEN PATEL,
and Plaintiffs-Appellants in
consolidated cases, LOS ANGELES
LODGING ASSOCIATION and all named
individuals

## DECLARATION OF FRANK A. WEISER

I, FRANK A. WEISER, do hereby declare:

1. I am the attorney for the lead Plaintiffs and Appellants NARANJIBHAI PATEL and PRAMILABEN PATEL and the Plaintiffs and Appellants in the consolidated cases, LOS ANGELES LODGING ASSOCIATION and all named individuals ("Plaintiffs") (District Court Nos. CV-05-01571-DSF(AJWx) consolidated w/CV 3610 DSF(AJWx) and CV 04-) 2192 DSF(AJWx) (see ER: 44-47, 49, 70:1-10, 86-88; see <u>City of Los Angeles v Patel</u>, 576 U.S. ___ (2015), Slip Op. pg. 3 (Supreme Court Docket No. 13-1175) ("City of Los Angeles v Patel")).

2. Pursuant to Circuit Rule 39-1.8, I make this declaration in support of the motion and request for transfer of the matter of entitlement to attorneys fees and the amount thereof regarding the litigation in <u>City of Los Angeles v Patel</u> to the district court for consideration in consolidation with the issue of entitlement and amount of fees based on the hours incurred in the district court litigation in the matter pursuant to 42 U.S.C. § 1988.

3. In the alternative, pursuant to and Ninth Circuit Local Rule 39-1.6, I respectfully request an extension of time of thirty (30) days, or whatever time the Court deems reasonable to supplement this motion for attorneys fees.

1

4. On March 10, 2014, the Court issued an order granting my previous request for an extension of time to supplement the appellants attorneys fees motion within 10 days of the filing date of the order ("Order"). (Docket No. 64).

5. Pursuant to the Court's Order, I have filed the Declaration of Carol A. Sobel in Support of Appellants' Motion for Attorneys Fees with attached exhibits in Volumes 1-4. (Docket Nos. 65-66).

6. I am an attorney duly licensed in the State of California and licensed to practice in the Southern, Central and Northern District Courts of California including in the Ninth Circuit. I am also licensed to practice in various federal circuit courts including being a member of the bar of the U.S. Supreme Court.

7. I earned my Bachelor's degree in Philosophy from U.C.L.A in 1976 attending as a National Merit Scholar. I also attended Southwestern University School of Law where I graduated in 1979. While in law school, I earned the Bancroft-Whitney award for Taxation. After graduation from law school, I passed the California State Bar in 1979 and earned a Masters of Law in Taxation from the University of San Diego School of Law in 1986.

8. Since being admitted to the California Bar in 1979, I have been in private practice as a sole practitioner in Los Angeles, CA.

2

9. My practice has been focused over the years in assisting the Asian-Indian community primarily in the constitutional and civil rights area related to the motel industry.

10. I have practiced extensively before the Ninth Circuit and I have numerous published opinions including the published opinions of <u>Patel v Penman</u>, 103 F.3d 868 (9th Cir. 1996) (42 U.S.C. § 1983 action); <u>Patel v City of San Bernardino</u>, 310 F.3d 1134 (9th Cir. 2002) (42 U.S.C. § 1983 action); <u>City of San Bernardino Hotel/Motel Association v City of San Bernardino</u>, 59 Cal.App. 4th 2337 (1997) (due process action).

11. I believe that I have litigated both at the district court level and on appeal in this circuit and in California state courts a wide variety of civil rights issues dealing with the motel industry.

12. Some of the cases have been national cases that I believe have set precedent on a number of issues and that have been cited by multiple state and federal courts throughout the United States and that have been cited in law review articles throughout the United States.

13. In the <u>City of San Bernardino</u> case, I facially invalidated in the California Court of Appeals a transient occupancy tax on behalf of a local Asian-Indian motel association in the City of San Bernardino on constitutional due process grounds.

3

14.    Subsequently, I filed suit under 42 U.S.C. § 1983 for damages for the motel association members in the Patel v City of San Bernardino case and Judge Browning authored a published opinion finding that the case presented a novel issue under the federal Tax Injuction Act codified at 28 U.S.C. §1341.

15.    A Ninth Circuit panel has cited the City of San Bernardino case in a case entitled City of Oakland v. Hotels.ComLP, 572 F.3d 958 (9th Cir. 2009) that dealt with a collection action by the City of Oakland for transient occupancy tax.

16.    I have been given awards in my practice by the City of Los Angeles, County of Los Angeles, California State Assembly and California State Senate for my civil rights work on behalf of the Asian-Indian community and in working with Asian-Indian motel owners and the forner Southern California Asian-Indian Hotel/Motel Association in assisting the homeless by providing free shelter.

17.    On April 11, 1989, I was placed in the Congressional Record by Congressman Merv Dymally for my civil rights work on behalf of the Asian-Indian community and Asian-Indian motel owners.

18.    Many of the cases that I have litigated over the years for motel owners and associations have been reported in such papers as the Los Angeles Times, Orange

4

County Register, San Bernardino Sun and various local papers throughout California.

19.    One such case that was covered extensively by the Los Angeles Times and the Orange County Register was when I challenged in the United States District Court for the Central District of California a City of Anaheim ordinance from 2000 to approximately 2003 that prohibited individuals from residing at motels in the City of Anaheim without the motel owner obtaining a special conditional use permit. (Los Angeles Times, May 11, 2001).

20.    The City of Anaheim eventually repealed the ordinance at issue that I believed benefited both motel owners and provided necessary shelter for low income individuals who reside at their motels and cannot afford rent at apartment buildings.

21.    I litigated the <u>City of Santa Cruz v Patel</u>, 155 Cal.App.4th 234 (2007) case challenging the constitutionality of a transient tax ordinance in the City of Santa Cruza on behalf of a local Asian-Indian motel association.

22.    Although the California Sixth District Court of Appeals found the ordinance constitutional a major benefit resulted from the case for citizens and business people throughout the State of California in that the Court of Appeals found that legislative subpoenas for records issued

5

by municipalities and upheld by a trial court under California Government Code §37104 are appealable orders to district court of appeal, thus, protecting individuals and businesses from contempt charges while they exercise their due process rights.

23. In _Dana Point Safe Harbor Collective v Superior Court_, 51 Cal.4th 1 (2010), the California Supreme Court resolved a state district court of appeals split and principally followed and adopted the reasoning of the _City of Santa Cruz_ case in holding that legislative subpoenas under California Government Code §37104 that are upheld by a trial court are appealable orders to a district court of appeal.

24. Thus, I believe that over the years that I have practiced extensively in the motel industry and I have litigated and attempted to litigate at both the trial and appellate level both in the Ninth Circuit and California State Appellate courts a wide variety of novel and complex constitutional and procedural issues, some successful and some not, but hopefully that the courts, including the Ninth Circuit, find in some cases interesting and ultimately beneficial to the public, the motel industry and the business community in general.

25. Attached hereto is the Declaration of Thomas C. Goldstein in Support of Appellant's Motion for Attorney's Fees with a detailed breakdown of the time that he and the

6

partners in his firm expended in the <u>City of Los Angeles v</u>
<u>Patel</u> case.

27.    As my co-counsel, Thomas C. Goldstein, Esq., of
Goldstein & Russell, P.C. has cogently and extensively set
out in his accompanying declaration  respectfully the the
Supreme Court's decision in this case is extremely important
and has a national impact in protecting the Fourth Amendment
rights of the parties to the litigation but also the public
at large.

28.    Not only did the plaintiffs successfully defend
in the Supreme Court this Circuit's en banc opinion declaring
Los Angeles Municipal Code §41.49 facially unconstitutional
under the Fourth Amendment but also established that (1)
facial  challenges  under  the  Fourth  Amendment  are  not
categorically barred or especially disfavored (<u>City of Los</u>
<u>Angeles v Patel</u>, Slip Op. pp.4-7); (2) held that under the
proper facial analysis, only applications of a statute in
which the statute actually authorizes or prohibits conduct
are considered (<u>City of Los Angeles v Patel</u>, Slip Op. pp.7-
8); and (3) rejected the contention that the hotel industry
was closely regulated for purposes of the more relaxed Fourth
Amendment standards under <u>New York v Burger</u>, 482 U.S. 691,
702-703 (<u>City of Los Angeles v Patel</u>, Slip Op. pp.13-17).

29.    And  as  Mr.  Goldstein  so  aptly  state:  "[t]he plaintiffs' victory in this case prevented the erosion of a critical bulwark against further warrantless, suspicionless intrusions  into  business  records."  (See  Goldstein Declaration, paragraph 29).

30.    As  Mr.  Goldstein  states  in  his  declaration,  I acted as counsel of record for the plaintiffs in the Supreme Court and spent a substantial amount of time leading the team and  providing  my  own  insights  and  comments  on  the  work product, which included the filing of the brief in opposition for  plaintiffs  at  the  certiorari  stage  including  at  the merits stage.

31.    I expended considerable research time in reviewing the City's certiorari petion and its opening and reply briefs on the merits including reviewing the numerous amicus briefs filed by both sides.

32.    In  addition,  I  attended  and  conducted  a  private moot  court  in  Los  Angeles  with  Mr.  Goldstein  and  Mr.  Singh present in addition to flying and staying in Washington, D.C. and was out of my office from February 23, 2015 through the date of oral argument on March 3, 2015.

33.    In  Washington,  D.C.,  I  attended  and  critiqued three  (3)  moot  courts  in  assisting  Mr.  Goldstein,  one  at Georgetown  University  School  of  Law  and  two  other  private moot courts.

34. As counsel of record, Mr. Goldstein requested that I attend and act as second chair when the case was argued on March 3, 2015 before the Supreme Court.

35. As I stated in a telephone conversation today with Mr. Goldstein's partner Tejinder Singh, I conservatively estimate that my time expended at the Supreme Court level is well over two (200) hours.

36. However, I have yet to detail the exact amount of hours that I expended due to my extreme backlog in my trial and appellate practice.

37. After this Court issued its en banc opinion on December 24, 2014, I contacted Carol A. Sobel, Esq., who I believe is a nationally famous and extremely well regarded civil rights expert who practices extensively in the Central District where this case originated and in the Ninth Circuit.

38. Prior to doing so, I was referred to her by another well known civil rights expert and I had never met or had any contact with Ms. Sobel.

39. I requested that Ms. Sobel provide me with an analysis based on her experience and knowledge of the prevailing market rate for civil rights work of this kind in the legal community.

40. Ms. Sobel states in her supporting declaration for the fees on appeal before this Court that she believes a reasonable hourly rate for my work on appeal is $750.00 per

9

hour. (See Declaration of Carol A. Sobel in suuport for fee motion on appeal, paragraph 26; Docket Nos. 65-66).

41.    While I believe that this accurately reflects a comparable hourly rate in the for my work on appeal, in addition to requesting more time to supplement this motion to detail the actual hours that I worked at the Supreme Court levelI also request such the extension to determine whether as lead counsel of record in the case I am entitled to a higher rate.

42.    In doing so, I would request more time for an extension to supplement the motion for fees with additional declarations by Mr. Goldstein and other Supreme Court advocates as to what they opine my hourly rate is in this case.

43.    In addition, while I recognize that an enhanced award of attorney's fees in civil rights cases may be proper despite the strong presumption that the lodestar method is reasonable, the Supreme Court has held that the lodestar was never intended to be conclusive in all circumstances and that the presumption may be overcome in rare cases in which the lodestar does not reflect factors that may be considered in awarding reasonable fees. See Perdue v Kenny A., 559 U.S. 542, 554-555 (2010).

44.     Based on the what I respectfully believe are the clearly superior and unuique results achieved in this case based on plaintiffs' counsel's performance, as set forth in paragraphs 27-29 above, I respectfully request that an enhancement of at least 75% be added to any fees awarded for the work done at the Supreme Court level of this case.

45.     At present, the issue of the attorney's fees for work that I did at the district court level is still pending before the Judge Fischer, the district court judge.

46.     I have attended multiple status conferences with Deputy City Attorney Todd Leung after this Court issued its en banc opinion and as I recall Mr. Leung and I have agreed on the record with Judge Fischer's concurrence that the issue of attorney's fees for the district court work has been continued until after the Supreme Court would decide the case.

47.     Based on the stipulation between Mr. Leung and myself as to the district court fees I have yet to file a motion for fees in the district court as our next status conference before Judge Fischer is set for August 24, 2015. (See District Court Docket No. 96).

11

48.   As to the attorney's fees on appeal, on April 29, 2014, this Court granted plaintiffs motion to be determined the prevailing parties for 42 U.S.C. § 1988 fees on appeal and referred the matter to Appellate Comissioner Peter L. Shaw to fix and determine the amount of fees (Docket No. 72).

50.   On May 7, 2014, Commissioner Shaw referred the matter to the Circuit's mediation office and the mediation for appeal fees has been conducted by Peter Sherwood. (Docket No. 73).

51.   I have participated in multiple mediation telephone conferences with Mr. Sherwood and Mr. Leung and Deputy City Attorney Ron Whittaker. (Docket No. 74-83).

52.   The parties have agreed to a figure settling the appeal fees which I understand has been approved by the City Council and Mayor.

53.   Therefore, plaintiffs first respectfully request, that the fees regarding the Supreme Court <u>City of Los Angeles v Patel</u> case be transferred to the district court for consideration in consolidation with the issue of entitlement and amount of fees based on the hours incurred in the district court litigation in the matter pursuant to 42 U.S.C. § 1988.

12

54. In the alternative, should the Court not transfer the matter to the district court, I respectfully request an extension of time of thirty (30) days, or whatever time the Court deems reasonable to supplement this motion for attorneys fees with the hours that I have worked at the Supreme Court level and any additional declarations that will bear on my applicable hourly rate.

55. I was not compensated by my clients in working on this appeal and in the Supreme Court other than the payment of approximately $2,900 for payment of costs; rather I have to expend my own resources to litigate the appeal before this Court and the Supreme Court.

56. I am requesting an extension of time to supplement the motion should the Court not transfer the matter to the district court, because I am extremely backlogged as I have three other appellate opening briefs that I am working on that and a petition for rehearing and/or rehearing en banc that is presently due tomorrow, July 7, 2015 in this Circuit.

57. This is in addition to a very heavy trial calendar that includes preparation for a civil trial in the Los Angeles Superior Court in August of this year.

58. I am a sole practitioner that was exacerbated by my particpation as counsel of record in this case.

13

59. In addition, as I have explained previously to this Court, I am wearing an ostomy bag from a life threatening operation that I underwent some years back due to my Crohn's Disease condition and resulting toxic megacolon. (Docket No. 66).

60. This has also hampered and backlogged my practice, generally requiring that I attempt to rest during the day if I do not have to be in court or in a deposition, in order to conserve my strength.

61. As I attempt to work later in the evening to catch up on my work, my hourly schedule has also contributed to my backlog.

62. I believe that this motion is clearly timely under Circuit Rule 39-1.6 and Rule 39-1.8 as it is being made no later than 14 days after the expiration of the time of a petition for rehearing may be filed which under Circuit Rule 40(a)(1) may be 14 days after entry of judgment.

63. On June 22, 2015 the Supreme Court issued its opinion in this case (Docket No. 84). The judgment from the Supreme Court will not issue until at least 25 days after June 22, 2015 and during such time a petition for rehearing may be made to the Supreme Court. (Docket No. 85).

64. If this motion were to be deemed untimely, I would request relief that it be filed because of my backlog as explained above, I could not complete the motion for filing until some twenty minutes before midnight on July 6, 2015.

65. When I attempted to file the motion in my office before midnight, I encountered a problem with my computer and I am going to file it at a Kinko's location early in the morning on Luly 7, 2015.

66. Since I could not file it by midnight July 6, 2015, I decided to e-mail notice of this motion to Mr. Orland in addition to the telephonic notice that I previously sent him.

67. On Monday, July 6, 2015 at approximately 3:15 p.m., I called Deputy City Attorney Gregory Orland at (213) 978-8160 and left him a message informing him that I would be making a motion to the Circuit requesting that the matter of attorney's fees in the Supreme Court be transferred to the district court.

68. I did not hear back from Mr. Orland by the close of business today.

69. On Monday, July 6, 2015 at approximately 10:41 p.m., I once again called Deputy City Attorney Gregory Orland at (213) 978-8160 and left him a message informing him that I would be making a motion to the Circuit requesting that the matter of attorney's fees in the Supreme Court be transferred to the district court, but in the alternative, for an extension of time to supplement this motion for attorneys fees.

70. I then followed up on the same day at approximately 10:50 p.m. with another message to Mr. Orland that the extension I was requesting was for thirty (30) days, or whatever time the Court deems reasonable to supplement the motion for attorneys fees.

15

71. On July 7, 2015, at approximately 1:06 a.m., I also e-mailed Mr. Orland informing him of this motion and requesting his position on the matter. I will supplement this motion when I hear back from Mr. Orland as to his position on the matter.

72. Thus, I respectfully request that this motion be granted.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 7th day of July 2015 at Los Angeles, California.

FRANK A. WEISER

16

I.

## MEMORANDUM OF POINTS ND AUTHORITIES

A.      THE MOTION TO TRANSFER CONSIDERATION OF
        ATTORNEYS FEES ON APPEAL TO THE DISTRICT
        COURT SHOULD BE GRANTED

In Hensley v Eckerhart, 461 U.S. 424, 434 (1983), the
U.S. Supreme Court emphasized that in 42 U.S.C. §1983 cases,
"[w]here a plaintiff has obtained excellent results, his
attorney should recover a full compensatory fee," and that "the
fee should not be reduced simply because the plaintiff failed to
prevail on every contention raised in the lawsuit. This case was
extensively litigated on in the district court, on appeal to
this circuit and in the Supreme Court in a series of complex
legal issues that was required to be addressed by the parties.

The issue on which this case was affirmed in the Supreme
Court was the same issue as addressed in Patel v City of Los
Angeles, 738 F.3d 1058 (9th Cir. 2013) (en banc), the facial
constitutionality of Los Angeles Municipal Code ("LAMC") §
41.49 under the Fourth Amendment.

Moreso, not only did the plaintiffs successfully defend
in the Supreme Court this Circuit's en banc opinion declaring
Los Angeles Municipal Code §41.49 facially unconstitutional
under the Fourth Amendment but also established that (1) facial
challenges under the Fourth Amendment are not categorically

17

barred or especially disfavored (<u>City of Los Angeles v Patel</u>, Slip Op. pp.4-7); (2) held that under the proper facial analysis, only applications of a statute in which the statute actually authorizes or prohibits conduct are considered (<u>City of Los Angeles v Patel</u>, Slip Op. pp.7-8); and (3) rejected the contention that the hotel industry was closely regulated for purposes of the more relaxed Fourth Amendment standards under <u>New York v Burger</u>, 482 U.S. 691, 702-703 (<u>City of Los Angeles v Patel</u>, Slip Op. pp.13-17).

An enhanced award of attorney's fees in civil rights cases may be proper despite the strong presumption that the lodestar method is reasonable, the Supreme Court has held that the lodestar was never intended to be conclusive in all circumstances and that the presumption may be overcome in rare cases in which the lodestar does not reflect factors that may be considered in awarding reasonable fees. See <u>Perdue v Kenny A.</u>, 559 U.S. 542, 554-555 (2010).

The unique results in defending the Circuit's opinion before the Supreme Court justifies an enhanced fee award of 75% in addition to the lodestar award.

This motion is clearly timely as it is made within 14 days after which a petition for rehearing can still be made from the June 22, 2015 opinion issued by the Supreme Court and in which a judgment has not yet issued under Supreme Court Rule 45 (Docket No. 84).

18

The judgment from the Supreme Court will not issue until at least 25 days after June 22, 2015 and during such time a petition for rehearing may be made to the Supreme Court. (Docket No. 85).

This motion is clearly timely under Circuit Rule 39-1.8 or 39-1.6 and Rule 409a)(1). Even if this motion was not dealing with a Supreme Court decision where a right to petition is increased to 25 days after issuance of the opinion, under this circuit's well established precedent an application for fees may be made within 14 days after a petition for rehearing to a <u>full</u> en banc court after an en banc decision. See <u>Berger v City of Seattle</u>, 580 F.3d 941-942 (9th Cir. 2009) (en banc).

Further, the district court has jurisdiction for work performed the Supreme Court. See <u>Perkins v Standard Oil Company of California</u>, 399 U.S. 222 (1970); see also <u>Local 17, Intern. Ass'n of Heat v Young</u>, 775 F.2d 870, 872 (1985).

///

19

II.

CONCLUSION

For all the foregoing reasons, Plaintiffs resprctfully request that this motion be granted.

DATED: July 7, 2015                    Respectfully submitted,

                                       LAW OFFICES OF FRANK A.
                                       WEISER

                                   By: _____
                                       FRANK A. WEISER, Attorney
                                       for Plaintiffs-Appellants
                                       NARANJIBHAI PATELm and
                                       RAMILABEN PATEL
                                       and Plaintiffs-Appellants
                                       in consolidated cases, LOS
                                       ANGELES LODGING ASSOCIATION
                                       and all named individuals

20

EXHIBIT "A"

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| NARANJIBHAI PATEL, et al.<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>CITY OF LOS ANGELES, et al.<br><br>Defendants-Appellees, | No. 08-56567<br><br>DC# CV-05-01571-DSF (AJWx)<br>[consolidated with CV 03-3610 DSF<br>(AJWx) and CV 04-2192 DSF (AJWx)]<br><br>Central California |

**DECLARATION OF THOMAS C. GOLDSTEIN IN SUPPORT
OF APPELLANT'S MOTION FOR ATTORNEY'S FEES**

I, THOMAS C. GOLDTEIN, declare:

1. I am an attorney admitted to practice before this Court, the Supreme Court of the United States, the United States Courts of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Tenth, D.C., and Federal Circuits, and the highest courts of the District of Columbia and Maryland. This declaration is submitted in support of the plaintiff's motion for attorney's fees accrued in the Supreme Court, by my law firm, Goldstein & Russell, P.C., which total $305,887.50. Because of my personal involvement in the case, I am familiar with the facts and circumstances pertaining to this matter.

2. I graduated from law school in 1995 and was admitted to practice that year. I founded my own law firm in 1999, focused on representing clients in the Supreme

Court of the United States. From the year 2005 until the end of 2010, I was a partner and the head of the Supreme Court and appellate practice at Akin Gump Strauss Hauer & Feld, and for several of those years I was the co-head of the firmwide litigation practice as well. At the end of 2010, I left Akin Gump to rejoin my own firm. Today, the firm is a four-lawyer boutique that remains focused on litigation before the Supreme Court and the courts of appeals. In a typical Term, the firm represents parties in four to seven merits cases, and in approximately five to ten additional cases at the certiorari stage. Last Term, the firm represented parties in five merits cases, winning all five.

3. I have personally argued 35 cases before the Supreme Court, including this one, and I have been counsel of record on more successful petitions for certiorari over the past decade than any other lawyer in private practice. In addition to this case, I have previously argued three Fourth Amendment Supreme Court cases, *Georgia v. Randolph* (No. 04-1067), *Virginia v. Moore* (No. 06-1082), and *Florence v. Board of Freeholders* (No. 10-945). I also recently secured the dismissal of an indictment after winning Fourth Amendment suppression motions in the United States District Court for the District of Nevada. *See United States v. Wei Seng Phua*, No. 14-cr-249-APG-PAL (D. Nev.).

4. I have been recognized by the *National Law Journal* as one of the 40 most influential lawyers of the decade, and twice as one of the nation's 100 most

2

influential lawyers, as well as by the *Legal Times* as one of the 90 greatest Washington lawyers of the last 30 years. I am an elected Fellow of the American Academy of Appellate Lawyers, and a member of the American Law Institute.

5. I am also a member of the faculty of the Harvard Law School Supreme Court Litigation Clinic, which I have taught since 2004. I also taught Supreme Court litigation at Stanford Law School from 2004 until 2012. A team of students from the Harvard clinic assisted my colleagues and me in this litigation.

6. In addition to my law practice, I publish the SCOTUSblog, which provides up-to-the minute news coverage and commentary, as well as analysis, on the Supreme Court and its cases. My partners and I also make regular appearances at CLE panels as well as television and radio programs to discuss developments at the Court and the nuances of Supreme Court advocacy. My practice and my work with the blog and the media have provided me with deep knowledge about how the Court functions and about the best ways to craft arguments for the Justices.

### FACTUAL BACKGROUND

7. Los Angeles Municipal Code § 41.49 was a city ordinance that entitled police officers to inspect hotel guest records without a warrant or suspicion. In practice, the ordinance frequently was abused by police officers to harass the owners of establishments that they disliked. A group of motel owners filed a civil action against the city under § 1983, alleging that the ordinance on its face violates

3

the Fourth and Fourteenth Amendments to the U.S. Constitution. Separate damages claims against individual defendants were also filed, but were placed on hold pending the outcome of the case against the city.

8. After a bench trial, the district court held that the plaintiffs lacked a legitimate expectation of privacy in the records, and therefore refused to find the ordinance unconstitutional. A divided panel of this Court initially affirmed, but upon en banc review, the Court held that the ordinance violates the Constitution. It concluded that the ordinance "is facially invalid under the Fourth Amendment insofar as it authorizes inspections of those records without affording an opportunity to obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply." *Patel v. City of Los Angeles*, 738 F.3d 1058, 1065 (9th Cir. 2013) (quotation marks omitted).

9. Four judges dissented from that holding in two separate opinions. The first opinion argued that the facial challenge must fail under the Supreme Court's decision in *Sibron v. New York*, 392 U.S. 40 (1968), which could have been read to suggest that facial Fourth Amendment challenges are not permissible. The second argued that the challenge should fail on the merits because the searches in question are reasonable.

10. The city filed a petition for a writ of certiorari raising two questions: (1) whether facial Fourth Amendment challenges are ever permitted; and (2) whether

4

hotels have an expectation of privacy in their guest registries, and if so, whether ordinances like Los Angeles' are unconstitutional unless they provide an opportunity for pre-compliance judicial review. *See* Petition for a Writ of Certiorari, *City of Los Angeles v. Patel*, No. 13-1175, at i (2014). The petition alleged "a multi-tier split of decision by severely divided courts," and "a compelling national interest to decide these issues." *Id*. 5-6.

11. The plaintiffs' counsel of record, Frank Weiser, an experienced solo practitioner in Los Angeles, requested my firm's assistance in opposing the petition. My firm initially provided comments and eventually a draft revision to the brief in opposition, which Mr. Weiser reviewed, discussed with us, and then filed without substantial alteration.

12. Over our opposition, the Supreme Court granted certiorari. To litigate the merits, the city hired E. Joshua Rosenkranz, the head of the Supreme Court and appellate litigation practice at Orrick, Herrington, & Sutcliffe LLP, who has, to date, argued eleven cases in the Court (including this one). Mr. Rosenkranz has also personally argued more than 160 other appeals, and served as attorney of record in approximately 1,500 other appeals. As the founding president and CEO of the Brennan Center for Justice at New York University School of Law, Mr. Rosenkranz's deep experience in the areas of appellate advocacy and civil rights make him a formidable attorney in any case involving these issues.

5

13. Against that backdrop, the plaintiffs in this case chose to retain our law firm to collaborate with Mr. Weiser to represent them in the merits phase, including by enlisting the aid of a team of students in the Harvard Law School Supreme Court Litigation Clinic, who aided us in the briefing and preparation for oral argument. We agreed to take on the representation pro bono, subject only to a potential recovery of prevailing party fees under § 1988.

14. On June 22, 2015, the Supreme Court affirmed this Court in a 5-4 decision. The Court held first that "facial challenges can be brought under the Fourth Amendment," and further held "that the provision of the Los Angeles Municipal Code that requires hotel operators to make their registries available to the police on demand is facially unconstitutional because it penalizes them for declining to turn over their records without affording them any opportunity for precompliance review." *City of Los Angeles v. Patel*, No. 13-1175, Slip Op. 1. The decision precipitated two dissenting opinions.

## ANALYSIS OF FEES

15. In my experience heading a Supreme Court and appellate litigation boutique, and previously heading a Supreme Court and appellate litigation practice at a leading national law firm, I have become familiar with the economics of law practice, billing rates, billing practices, the cost and recovery of fees and expenses, and the setting and collection of legal fees in a variety of circumstances, including

6

cases presenting professional demands, factual and legal complexity, and risk and expense levels comparable to this case. I regularly represent plaintiffs and defendants on an hourly rate basis, as well as under alternative fee arrangements. I have also negotiated fee arrangements and pitched for business in competitive settings, where I have had the opportunity to learn what rates other experienced Supreme Court attorneys are charging for their services in comparable cases.

16. There can be no doubt that my clients are the prevailing party in this litigation, having obtained a decision of the Supreme Court compelling essentially all of the relief they requested from the city. Consequently, they are entitled to their reasonable attorney's fees.

17. Based on my experience in this area, I believe that the requested fees for our firm are plainly reasonable using the "lodestar" method because we have charged reasonable hourly rates for a reasonable number of hours of work. I have attached as Exhibit A an itemized record of our firm attorneys' time in this case, which sets forth the specifics.

18. Exhibit A shows first that we are requesting reasonable hourly rates. The billing rates reported therein ($1100 for my time; $750 for Kevin Russell's time; and $600 for Tejinder Singh's time) are the rates that we typically offer to the market, which were in effect at the time we agreed to represent the plaintiffs in this case.

7

19.All three of the attorneys who worked on this matter have extensive experience in briefing and arguing constitutional matters in the federal courts. Indeed, all three of us have argued and won cases in the Supreme Court. In addition to my credentials, which are described above, Kevin Russell has now argued 11 merits cases in the Supreme Court and served as counsel or co-counsel in nearly 50 such cases. Prior to joining the firm, Mr. Russell worked in the appellate section of the Civil Rights Division at the U.S. Department of Justice, arguing over two dozen cases. A graduate of Yale Law School in 1994, Mr. Russell clerked for Judges William Norris on this Court, and then for Justice Steven Breyer. Mr. Russell is also an instructor at the Harvard clinic, was previously an instructor at the Stanford clinic, and is a regular contributor to SCOTUSblog. Tejinder Singh is now a partner at the firm as well. Mr. Singh graduated from Harvard Law School in 2008 and clerked for Judge Diana Motz in the Fourth Circuit. He has assisted in briefing dozens of Supreme Court cases, and now frequently appears as counsel of record for parties and *amici* at the Court. In 2014 he argued and won his first Supreme Court case; and he recently argued in the Third Circuit as well. He has been recognized as a "Rising Star," *i.e.*, a top attorney under the age of 40 in Washington, D.C., by both the National Law Journal and by SuperLawyers, and was recently named to Bisnow's "2015

8

Trending 40 Lawyers under 40" list. Harvard has appointed him to the clinical

faculty, and he is a frequent contributor to the SCOTUSblog as well.

20. Our rates are generally similar to the rates charged by other leading Supreme

Court practitioners. For example, Mr. Rosenkranz, who argued this case for the

city, filed a fee application in 2013 stating that his attorney rate was $1020 per

hour in 2012 and 2013. *See* Declaration of E. Joshua Rosenkranz, *John Wiley &*

*Sons, Inc. v. Kirtsaeng*, No. 08-cv-7834-DCP, ECF No. 95, at 3 (2d Cir. 2013).

That same application notes that Mr. Rosenkranz's other partners billed at rates of

$850 per hour and $795 per hour, and that his more senior associates billed $615

per hour. *Id.* Those rates will presumably be higher today, as rates have generally

risen over time. Other Supreme Court practitioners bill at even higher rates. Paul

Clement bills his time at $1350 per hour. *See* Declaration of Paul D. Clement,

*Osterweil v. Bartlett*, No. 09-cv-825 (MAD/DRH), ECF No. 48-3, at 8 (N.D.N.Y.

2014). And Theodore Olson bills his services at $1800 per hour. *See* Notice of

Hearing on Debtors' Application, *In re Lightsquared Inc., et al.*, No. 12-12080-scc,

ECF No. 76, at 17 (S.D.N.Y. Bankr. May 29, 2012).

21. A recent billing survey by the *National Law Journal* shows that many law

firms employ partners who charge rates in excess of mine. One of these firms is

Akin Gump Strauss Hauer & Feld, where I worked as the co-head of firmwide

litigation until the end of 2010. That firm presently employs partners who bill

9

$1220 per hour. *See* Billing Rates at the Nation's Priciest Law Firms, National Law Journal, http://www.nationallawjournal.com/id=1202713889426/Billing-Rates-at-the-Nations-Priciest-Law-Firms (Jan. 5, 2015).

22.Importantly, the rates in Exhibit A are our market rates even in cases that are not taken on a contingency basis. Here, however, we agreed to represent the plaintiffs pro bono, recovering only prevailing party fees under § 1988, and so the case is effectively a contingency matter from our perspective. Ordinarily, when we take on a substantial risk of non-recovery (as in contingency cases), we charge a multiplier of our time (between two and three times the normal rate, depending on the amount in controversy and the amount of effort expended by other attorneys in the case). In light of the substantial risk that we would not have been paid for taking on this representation, the rates in Exhibit A are on the low end.

23.The hours worked are also reasonable—indeed, they are lean. During the course of this litigation, we consciously endeavored to minimize the expense generated by our firm by assigning tasks to the most affordable attorney capable of performing them. Thus, although I argued the case, I billed the fewest hours (104.25). The next attorney, partner Kevin Russell, billed only 112.75 hours in the case. Our most affordable attorney, Tejinder Singh (then a counsel at the firm, and now a partner), billed 177.75 hours. That adds up to a total of 394.75 hours spent by my firm to litigate both the certiorari and merits stages of this case, including

10

preparation for oral argument. To put that in perspective, when Supreme Court advocates at Jenner & Block represented a group of video game merchants in *Brown v. Entertainment Merchants Association*, No. 08-1448, they staffed the case using a team of nine attorneys (one senior partner, four other partners, one counsel, and three associates) who collectively spent more than 2000 hours to perform the same tasks that we performed here. *See* Respondents' Motion for Attorneys Fees and Expenses, *Brown v. Entertainment Merchants Ass'n*, No. 08-1448, at 11-12 (July 22, 2011), a*vailable at* http://sblog.s3.amazonaws.com/wp-content/uploads/ 2011/07/ESA-fee-motion-7-25-11.pdf. In my experience, such robust staffing is by no means unusual: Supreme Court cases require substantial effort to litigate well, and the stakes for both clients and the law tend to be very high.

24. In this case, we were able to minimize the time that attorneys spent by leveraging heavily the efforts of our student team. We estimate that the Harvard Law School students (seven of them) collectively spent more than 1200 hours in the case, providing us with invaluable research and drafting support. We reviewed their work carefully without duplicating it. At this time, we are discussing whether to seek reimbursement for the students' work with the law school administration. The present fee application therefore does not include the students' time, and we respectfully request leave to amend the application to add the fees for that time if the administration agrees with us that reimbursement is appropriate. Moreover, as

11

we prepared Exhibit A, I also reduced certain time entries in which we supervised the students, recognizing that while we spent most of our time with the students performing tasks necessary to the case, we also spent time advising them about how to hone their advocacy skills more generally. That time spent teaching has already been subtracted from the reported hours.

25. Mr. Weiser, who acted as counsel of record, also spent a substantial amount of time leading the team and providing his own insights and comments on the work product. We took care not to duplicate Mr. Weiser's efforts, and to take full advantage of his deep familiarity with the facts of the case. In addition to providing feedback on drafts, Mr. Weiser also carefully studied all of the applicable precedents, and we welcomed and incorporated his perspectives on the law as we crafted the briefs and the oral argument strategy. Mr. Weiser also attended and critiqued a moot court in Washington, D.C. He has submitted separate proof of the reasonableness of his rates and hours; I can attest that his contributions as counsel of record were substantial and beneficial to the clients.

26. Not only are the inputs into the lodestar calculation reasonable, but the ultimate result—a fee of $305,887.50—is very low considering that we prepared papers at both the certiorari and the merits stage, and also represented the clients at the oral argument. As a comparison, the attorneys who represented the respondents in *Brown v. Entertainment Merchants Association* sought $1,144,602.64 in fees,

12

and ultimately settled in this Court for a payment of $950,000. *See Entertainment Merchants Ass'n v. Brown*, No. 07-16620, ECF No. 55 (9th Cir. 2012).

27. This was also a very difficult case to litigate and to win. As the sharply divided opinions illustrate, the case involved multiple contentious issues of constitutional law. It raised the broad question of whether and when facial Fourth Amendment challenges are permitted; it raised the separate question of whether hotels are closely regulated industries within the meaning of Supreme Court precedent; it raised the question whether business owners have privacy interests in records that were created to comply with government requirements; and it raised the ultimate question whether the ordinance in this case was unconstitutional in all of its applications. Had the city convinced only one more Justice of its position on any of those questions, it is highly likely that the city would have prevailed in this litigation. The city was also supported by powerful *amici*, including the United States.

28. In the face of the challenge posed by the case, there is substantial evidence that our efforts advocating for the plaintiffs were important to the result. The majority opinion takes the somewhat unusual step of citing our assurances at oral argument not once, but twice. *See* Slip Op. 11-12. The majority opinion also cites a Department of Justice study that I referred to only in oral argument. *Compare* Slip Op. 12 *with* Oral Arg. Tr. 59. And in other places, the majority opinion adopts

13

language from our brief to respond to the city's arguments. *Compare* Slip Op. 15 ("Petitioner attempts to recast this hodgepodge of regulations as a comprehensive scheme . . .") *with* Resp. Br. 31 ("The City argues that hotels are pervasively regulated within the meaning of this exception because they are subject to a hodge-podge of regulations . . ."). These references suggest that the effort and care that we put into the research, the drafting, and oral argument preparation were invaluable in this case.

29. The case is also extremely important. As the city itself argued in urging the Court to grant certiorari, the issues here are of national importance. Even if the outcome of the case had been limited only to the constitutionality of hotel registry inspection laws, such laws exist in at least seventy jurisdictions in twenty six states. *See* Pet. 6. But as the eighteen filed *amicus* briefs and the news commentary about the case illustrate, this case had the potential to be one of the most explosive business records privacy decisions in recent memory. The plaintiffs' victory in this case prevented the erosion of a critical bulwark against further warrantless, suspicionless intrusions into business records.

30. For the foregoing reasons, I submit that the requested fees for my firm's work in this case are reasonable.

14

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

July 6, 2015

Thomas C. Goldstein

Time for Goldstein & Russell Attorneys

| Client | | | | Naranjibhai Patel et al. | Total Fee |
|---|---|---|---|---|---|
| Matter | | | | City of Los Angeles v. Patel | $305,887.50 |

| Date | Attorney | Rate | Hours | Narrative | Fee (USD) |
|---|---|---|---|---|---|
| 7/28/2014 | Singh | $600.00 | 1.50 | Review draft brief in opposition (BIO) by F. Weiser | $900.00 |
| 7/29/2014 | Singh | $600.00 | 3.75 | Review underlying record (pleadings, court of appeals briefing, alleged split cases) to comment on draft BIO | $2,250.00 |
| 7/30/2014 | Singh | $600.00 | 4.50 | Complete review of pertinent record materials. Prepare draft memo suggesting revisions to BIO | $2,700.00 |
| 7/31/2014 | Goldstein | $1,100.00 | 1.50 | Review and comment on suggestions for BIO | $1,650.00 |
| 7/31/2014 | Singh | $600.00 | 0.50 | Incorporate T. Goldstein comments to memo; circulate to F. Weiser | $300.00 |
| 8/1/2014 | Singh | $600.00 | 2.25 | Review correspondence with F. Weiser re: BIO strategy. Begin drafting BIO | $1,350.00 |
| 8/4/2014 | Goldstein | $1,100.00 | 1.00 | Exchanges on draft BIO edits | $1,100.00 |
| 8/4/2014 | Singh | $600.00 | 4.50 | Draft BIO | $2,700.00 |
| 8/5/2014 | Singh | $600.00 | 3.75 | Draft BIO | $2,250.00 |
| 8/7/2014 | Singh | $600.00 | 3.50 | Complete first draft BIO and circulate to F. Weiser; teleconference with F. Weiser to discuss BIO strategy | $2,100.00 |
| 8/8/2014 | Singh | $600.00 | 0.50 | Review F. Weiser BIO comments | $300.00 |
| 8/9/2014 | Singh | $600.00 | 0.50 | Incorporate F. Weiser comments on BIO and recirculate | $300.00 |
| 8/11/2014 | Russell | $750.00 | 0.50 | Review draft BIO | $375.00 |
| 8/11/2014 | Singh | $600.00 | 0.25 | Circulate draft BIO to K. Russell for review and comment | $150.00 |
| 8/12/2014 | Singh | $600.00 | 1.00 | Finalize and file BIO | $600.00 |
| 8/27/2014 | Singh | $600.00 | 0.50 | Review City reply brief | $300.00 |
| 10/6/2014 | Singh | $600.00 | 0.75 | Correspondence with T. Goldstein re: relisting of petition; teleconference with F. Weiser re: same | $450.00 |
| 10/15/2014 | Singh | $600.00 | 1.00 | Draft letter to Supreme Court re: City reply brief appendix; teleconference with F. Weiser re: same | $600.00 |
| 10/20/2014 | Goldstein | $1,100.00 | 0.75 | Teleconference with Court and correspondence with G. Orland re: briefing and argument schedule | $825.00 |

| Date | Attorney | Rate | Hours | Description | Amount |
|---|---|---|---|---|---|
| 10/23/2014 | Singh | $600.00 | 1.50 | Begin preparing list of potential amici; teleconference with F. Weiser re: amici | $900.00 |
| 10/24/2014 | Goldstein | $1,100.00 | 0.25 | Respond to media requests re: cert. grant | $275.00 |
| 10/24/2014 | Singh | $600.00 | 0.50 | Respond to media requests re: cert. grant | $300.00 |
| 10/27/2014 | Goldstein | $1,100.00 | 1.00 | Prepare for and attend conference call with potential amici | $1,100.00 |
| 10/27/2014 | Singh | $600.00 | 2.25 | Prepare for and attend conference call with potential amici; follow-up correspondence with additional amici; teleconference with American Hotel & Lodging Association | $1,350.00 |
| 10/28/2014 | Singh | $600.00 | 0.75 | Correspondence with Brennan Center; prepare amicus e-mail list | $450.00 |
| 10/29/2014 | Singh | $600.00 | 0.75 | Review proposed joint appendix documents with F. Weiser | $450.00 |
| 10/30/2014 | Singh | $600.00 | 0.75 | Teleconference with court of appeals re: argument transcripts; prepare scheduling proposal letter to Court | $450.00 |
| 11/7/2014 | Singh | $600.00 | 0.50 | Review district court transcript | $300.00 |
| 11/10/2014 | Singh | $600.00 | 1.25 | Correspond and teleconference with Institute for Justice re: amicus participation; research and contact potential academic amici | $750.00 |
| 11/11/2014 | Singh | $600.00 | 0.50 | Email exchanges to coordinate amici | $300.00 |
| 11/13/2014 | Goldstein | $1,100.00 | 0.75 | Conference call w/co-counsel regarding amicus strategy and joint appendix | $825.00 |
| 11/13/2014 | Singh | $600.00 | 0.75 | Teleconference with T. Goldstein and F. Weiser re: amici, joint appendix | $450.00 |
| 11/14/2014 | Singh | $600.00 | 1.00 | Review joint appendix materials; correspond with amici | $600.00 |
| 11/17/2014 | Singh | $600.00 | 0.50 | Prepare and file global consent letter | $300.00 |
| 11/21/2014 | Singh | $600.00 | 0.50 | Review petitioner's joint appendix designations | $300.00 |
| 11/27/2014 | Singh | $600.00 | 2.75 | Review en banc oral argument video and transcribe relevant portions | $1,650.00 |
| 11/28/2014 | Singh | $600.00 | 1.50 | Complete draft en banc transcript | $900.00 |
| 12/2/2014 | Singh | $600.00 | 1.00 | Revise en banc transcript per petitioner comments; negotiate with petitioner re: inclusion | $600.00 |
| 12/4/2014 | Singh | $600.00 | 0.75 | Review and accept petitioner comments to en banc transcript; correspond with amici | $450.00 |
| 12/10/2014 | Singh | $600.00 | 0.50 | Prepare amicus strategy outline | $300.00 |
| 12/10/2014 | Goldstein | $1,100.00 | 0.50 | Exchanges on amicus strategy | $550.00 |
| 12/11/2014 | Singh | $600.00 | 0.75 | Revise amicus strategy outline | $450.00 |

| 12/15/2014 | Singh | $600.00 | 1.50 | Review petitioner brief | $900.00 |
|---|---|---|---|---|---|
| 12/16/2014 | Goldstein | $1,100.00 | 1.00 | Review petitioner's opening brief | $1,100.00 |
| 12/16/2014 | Goldstein | $1,100.00 | 0.50 | Call w/ F. Weiser regarding petitioner's opening brief | $550.00 |
| 12/16/2014 | Singh | $600.00 | 3.50 | Begin respondents' merits brief outline | $2,100.00 |
| 12/17/2014 | Singh | $600.00 | 4.50 | Prepare merits brief outline | $2,700.00 |
| 12/18/2014 | Singh | $600.00 | 2.50 | Prepare merits brief outline | $1,500.00 |
| 12/19/2014 | Singh | $600.00 | 6.50 | Research for merits response | $3,900.00 |
| 12/22/2014 | Singh | $600.00 | 4.00 | Research; finalize amicus outline; review top side amicus briefs | $2,400.00 |
| 12/30/2014 | Singh | $600.00 | 1.50 | Prepare and distribute initial research assignments and reading materials for student teams | $900.00 |
| 1/1/2015 | Singh | $600.00 | 0.50 | Teleconference with K. Russell and T. Goldstein to discuss student research agenda | $300.00 |
| 1/2/2015 | Russell | $750.00 | 0.50 | Call with U.S. Chamber re:potential amicus brief | $375.00 |
| 1/2/2015 | Singh | $600.00 | 2.25 | Teleconference with U.S. Chamber re: amicus brief; correspondence with other amici | $1,350.00 |
| 1/5/2015 | Russell | $750.00 | 5.50 | Reading briefs and underlying record materials | $4,125.00 |
| 1/5/2015 | Russell | $750.00 | 2.00 | First meeting with students to assign research projects, discuss case | $1,500.00 |
| 1/5/2015 | Singh | $600.00 | 2.75 | Team meeting with students and K. Russell to discuss initial research assignments; teleconference with CATO institute; correspondence with other amici; | $1,650.00 |
| 1/6/2015 | Russell | $750.00 | 4.50 | Reviewing cases cited in briefs, taking notes | $3,375.00 |
| 1/6/2015 | Russell | $750.00 | 1.50 | Meeting with students to discuss results of first round of research projects | $1,125.00 |
| 1/6/2015 | Singh | $600.00 | 5.25 | Research for merits brief; teleconference with EPIC re: amicus participation; student team meeting to discuss initial research | $3,150.00 |
| 1/7/2015 | Goldstein | $1,100.00 | 0.50 | Meeting w/ A. Shank re drafting | $550.00 |
| 1/7/2015 | Russell | $750.00 | 2.50 | Research on facial challenges | $1,875.00 |
| 1/7/2015 | Russell | $750.00 | 2.00 | Meeting with students to discuss further research required | $1,500.00 |
| 1/7/2015 | Singh | $600.00 | 2.00 | Prepare for and meet with students to discuss research assignments | $1,200.00 |
| 1/8/2015 | Russell | $750.00 | 3.25 | Reviewing draft outline, meeting with students to discuss | $2,437.50 |
| 1/8/2015 | Singh | $600.00 | 2.50 | Review draft outline and meet with students | $1,500.00 |

| Date | Name | Rate | Hours | Description | Amount |
|---|---|---|---|---|---|
| 1/9/2015 | Singh | $600.00 | 4.00 | Supervise student revisions; review student research updates; ask follow-up questions | $2,400.00 |
| 1/10/2015 | Singh | $600.00 | 2.75 | Review answers to record questions; prepare follow-up; review student revisions to statement of the case outline | $1,650.00 |
| 1/12/2015 | Russell | $750.00 | 5.50 | Reviewing, commenting upon, first draft | $4,125.00 |
| 1/12/2015 | Singh | $600.00 | 6.75 | Review student first draft argument section and revised statement of the case; team meeting to discuss revisions and further research; research potential Internet business amici; correspond with other amici | $4,050.00 |
| 1/13/2015 | Russell | $750.00 | 2.50 | Further research on administrative searches | $1,875.00 |
| 1/13/2015 | Russell | $750.00 | 2.00 | Meeting with students on draft, discussing further research, reorganization | $1,500.00 |
| 1/13/2015 | Singh | $600.00 | 3.50 | Teleconference with U.S. Chamber re: amicus brief; further revisions on statement of the case; teleconference with F. Weiser | $2,100.00 |
| 1/14/2015 | Goldstein | $1,100.00 | 0.50 | Meeting w/ R. Homer re drafting | $550.00 |
| 1/14/2015 | Russell | $750.00 | 5.25 | Developing outline for revised draft | $3,937.50 |
| 1/14/2015 | Russell | $750.00 | 1.50 | Meeting with students to discuss further revisions to draft | $1,125.00 |
| 1/14/2015 | Singh | $600.00 | 1.00 | Review second draft and propose additional revisions | $600.00 |
| 1/15/2015 | Russell | $750.00 | 4.25 | Further research on "closely regulated" industries exception | $3,187.50 |
| 1/15/2015 | Russell | $750.00 | 1.50 | Meeting with students to discuss further edits to draft | $1,125.00 |
| 1/15/2015 | Singh | $600.00 | 4.50 | Workshopping meeting with entire student clinic re: Patel merits draft; propose additional revisions to statement of the case | $2,700.00 |
| 1/16/2015 | Goldstein | $1,100.00 | 5.00 | Preparation for workshop and editing sessions | $5,500.00 |
| 1/16/2015 | Russell | $750.00 | 1.50 | Further research on facial challenges | $1,125.00 |
| 1/16/2015 | Russell | $750.00 | 2.00 | Workshop with full class on draft brief | $1,500.00 |
| 1/16/2015 | Russell | $750.00 | 0.50 | Meeting with team to discuss next round of revisions in light of workshop | $375.00 |
| 1/16/2015 | Singh | $600.00 | 2.00 | Review F. Weiser comments to the brief; teleconference with F. Weiser re: brief; schedule moot courts | $1,200.00 |
| 1/17/2015 | Goldstein | $1,100.00 | 7.50 | Editing sessions w/ T. Norris, D. Kirk, R. Homer, A. Shank | $8,250.00 |
| 1/17/2015 | Russell | $750.00 | 2.50 | Further research on facial challenges | $1,875.00 |
| 1/17/2015 | Russell | $750.00 | 3.00 | Further research on special needs exceptions | $2,250.00 |
| 1/17/2015 | Russell | $750.00 | 1.00 | Drafting instructions for next revisions | $750.00 |
| 1/17/2015 | Singh | $600.00 | 0.75 | Consult with AAHOA re: amicus brief | $450.00 |

4

| 1/18/2015 | Goldstein | $1,100.00 | 5.50 | Editing sessions w/ M. Brodziak, S. Mirski, M. Qin | $6,050.00 |
|---|---|---|---|---|---|
| 1/19/2015 | Russell | $750.00 | 13.25 | Revising draft brief | $9,937.50 |
| 1/19/2015 | Singh | $600.00 | 8.00 | Edit brief with K. Russell and student team; assign and supervise last-minute research projects | $4,800.00 |
| 1/20/2015 | Russell | $750.00 | 4.50 | Revising draft brief | $3,375.00 |
| 1/20/2015 | Singh | $600.00 | 6.00 | Review and revise merits brief with K. Russell and student team | $3,600.00 |
| 1/21/2015 | Russell | $750.00 | 6.25 | Revising draft brief | $4,687.50 |
| 1/21/2015 | Singh | $600.00 | 7.50 | Supervise editing, cite-checking, drafting of summary of argument; correspond with amicus authors and review draft amicus briefs with student team | $4,500.00 |
| 1/22/2015 | Goldstein | $1,100.00 | 3.00 | Revising draft brief, near final version | $3,300.00 |
| 1/22/2015 | Russell | $750.00 | 10.25 | Revising draft brief | $7,687.50 |
| 1/22/2015 | Singh | $600.00 | 8.50 | Integrate final edits to brief; deliver amicus comments; final proofread together with student team | $5,100.00 |
| 1/23/2015 | Russell | $750.00 | 5.25 | Finalizing and filing brief | $3,937.50 |
| 1/23/2015 | Singh | $600.00 | 4.00 | Finalize and file merits brief | $2,400.00 |
| 1/26/2015 | Russell | $750.00 | 1.00 | Reviewing draft amicus brief | $750.00 |
| 1/26/2015 | Singh | $600.00 | 1.50 | Schedule moot courts; comment on AAHOA amicus brief | $900.00 |
| 1/27/2015 | Singh | $600.00 | 2.00 | Review and comment on amicus briefs | $1,200.00 |
| 1/28/2015 | Russell | $750.00 | 1.00 | Reviewing draft amicus brief | $750.00 |
| 1/28/2015 | Singh | $600.00 | 0.75 | Review and comment on amicus briefs | $450.00 |
| 1/29/2015 | Russell | $750.00 | 2.00 | Reviewing draft amicus brief | $1,500.00 |
| 1/30/2015 | Singh | $600.00 | 1.00 | Review filed amicus briefs | $600.00 |
| 2/7/2015 | Singh | $600.00 | 1.50 | Correspondence with clients re: brief and argument | $900.00 |
| 2/9/2015 | Russell | $750.00 | 0.50 | Call with co-counsel and clients on oral argument prep | $375.00 |
| 2/9/2015 | Goldstein | $1,100.00 | 1.50 | Preparation and call w/ clients and co-counsel | $1,650.00 |
| 2/9/2015 | Singh | $600.00 | 0.50 | Teleconference with clients, T. Goldstein and K. Russell re: brief and argument | $300.00 |
| 2/17/2015 | Goldstein | $1,100.00 | 3.50 | Prepare for and attend moot court in Los Angeles with clients, T. Singh, and F. Weiser | $3,850.00 |
| 2/17/2015 | Singh | $600.00 | 4.00 | Prepare for and attend moot court in Los Angeles with clients, T. Goldstein, and F. Weiser; review reply brief | $2,400.00 |
| 2/23/2015 | Goldstein | $1,100.00 | 6.50 | Preparation on substance of argument | $7,150.00 |
| 2/24/2015 | Goldstein | $1,100.00 | 5.00 | Prepare for moot court | $5,500.00 |

| Date | Attorney | Rate | Hours | Description | Amount |
|------|----------|------|-------|-------------|--------|
| 2/24/2015 | Goldstein | $1,100.00 | 5.50 | Prepare for and attend moot court at U.S. Chamber of Commerce with T. Singh | $6,050.00 |
| 2/24/2015 | Singh | $600.00 | 2.50 | Prepare for and attend moot court at U.S. Chamber of Commerce with T. Goldstein | $1,500.00 |
| 2/25/2015 | Goldstein | $1,100.00 | 7.00 | Prepare for and attend moot court at Georgetown with T. Singh, K. Russell, and student team; follow-up revisions to strategy | $7,700.00 |
| 2/25/2015 | Russell | $750.00 | 4.00 | Attending moot | $3,000.00 |
| 2/25/2015 | Singh | $600.00 | 4.50 | Prepare for and attend moot court at Georgetown with T. Goldstein, K. Russell, and student team; respond to additional questions from T. Goldstein; assign further questions to student team and review initial responses | $2,700.00 |
| 2/25/2015 | Russell | $750.00 | 2.50 | Attending moot | $1,875.00 |
| 2/25/2015 | Goldstein | $1,100.00 | 8.50 | Argument preparation | $9,350.00 |
| 2/26/2015 | Singh | $600.00 | 2.00 | Assist T. Goldstein with argument preparation; review student responses to questions and ask follow-ups | $1,200.00 |
| 2/27/2015 | Goldstein | $1,100.00 | 10.00 | Argument preparation | $11,000.00 |
| 2/27/2015 | Singh | $600.00 | 3.25 | Assist T. Goldstein with argument preparation; review student responses to questions and ask follow-ups; correspond with clients re: state of preparation | $1,950.00 |
| 2/28/2015 | Goldstein | $1,100.00 | 9.00 | Argument preparation | $9,900.00 |
| 2/28/2015 | Singh | $600.00 | 0.75 | Review student responses to questions and ask follow-ups | $450.00 |
| 3/1/2015 | Goldstein | $1,100.00 | 7.50 | Argument preparation | $8,250.00 |
| 3/2/2015 | Russell | $750.00 | 4.00 | Preparing for, attending moot | $3,000.00 |
| 3/2/2015 | Goldstein | $1,100.00 | 5.50 | Prepare, moot, and follow up | $6,050.00 |
| 3/2/2015 | Singh | $600.00 | 4.50 | Respond to final questions; conduct final in-house moot court with K. Russell and T. Goldstein | $2,700.00 |
| 3/3/2015 | Goldstein | $1,100.00 | 5.50 | Final preparations and argument | $6,050.00 |
| 3/3/2015 | Russell | $750.00 | 3.00 | Attending oral argument | $2,250.00 |
| 3/3/2015 | Singh | $600.00 | 3.00 | Attend oral argument | $1,800.00 |

| **Totals** | | | **394.75** | | **$305,887.50** |

EXHIBIT "B"

**From:** Frank A. Weiser <maimons@aol.com>
**To:** gregory.orland <gregory.orland@lacity.org>
**Subject:** Naranjibhai Patel v City of Los Angeles/Ninth Circuit Docket No. 08-56567
**Date:** Tue, Jul 7, 2015 1:08 am

Gregory Orland
Deputy City Attorney
200 N. Main Street, Suite 800CHE
Los Angeles, CA 90012

Dear Greg:

I called you several times yesterday, once during business hours and also several times several hours ago. As I stated in my voice messages, with the concurrence of Tom Goldstein and his firm I am filing a motion to the Ninth Circuit requesting that it transfer our application of attorney's fees for work done in the Supreme Court to Judge Fischer in the district court. The request is made under Circuit Rule 39-1.8. This is our first preference and Tom and I thought that perhaps you would stipulate to doing so. In the alternative, I am requesting in the motion pursuant to Circuit Rule 39-1.6 for fees for an extension of time to supplement the motion before the circuit.

I hope all is well with you Greg and I would appreciate it if you could e-mail me back your position later today so I can inform the Court.

Once again, I appreciate your courtesy and cooperation in the matter.


Sincerely,
Frank A. Weiser
Attorney at :Law
3460 Wilshire Blvd., Ste. 1212
Los Angeles, CA 90010
(213) 384-6964 - (voice)
(213) 383-7368 - (fax)
maimons@aol.com - (e-mail)

9th Circuit Case Number(s) | 08-56567

NOTE: To secure your input, you should print the filled-in form to PDF (File > Print > PDF Printer/Creator).

*******************************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | July 7, 2015 | .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | /s/ Frank A. Weiser - Attorney for Plaintiffs and Appellants

*******************************************************************************

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | | .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format) |